We have three argued cases this morning. The first of these is number 2012-1444 IN RE BAYER CROPSCIENCE. Mr. Litchford. Thank you, Your Honor. And may it please the Court. Claims before this Court are method claims. They constitute a new and non-obvious method of using an existing compound that will spawn an entirely different, if not more efficient method for controlling insects. A completely new way of using the known insecticide Fipronil. The breakthrough was the discovery that the insecticide Fipronil had a unique property of itself attracting insects. And it is certainly undisputed that attraction is an inherent property of Fipronil. We've taken that position throughout all the proceedings. The method taught in the 640 patent applies this feature in a manner that distinguishes it from the prior art. And what this method teaches is the effective application of Fipronil to areas that are not already infested by insects or at risk of infestation. At the outset, there is a continuing dispute between the parties. Yes, ma'am.  In locations where there's no infestation and no risk of infestation? Correct. That's the model. That is the difference. Actually, the main distinction from the prior art. Does it limit it to being practiced in places where there's no infestation and no risk of infestation? It does not limit it in that way, but the claims would be outside the scope. Excuse me. If there is infestation or there's at risk of infestation, there's no need for an additional attractant. In other words, the sources, the food sources, the attractants that are present at places or locations of infestation or risk of infestation, then the Fipronil, those attractants would be doing the attracting and not the Fipronil. I'm not exactly clear on that. I mean, why would somebody use this to where there's no infestation and no risk at all of infestation? Because it will attract the insects to move away, to reorient themselves to a different place. But they're not there. You say there's no infestation there and there's no risk of infestation. Right, but that doesn't mean the insects aren't there. The insects have to travel to either a place that's at risk of infestation or infestation. This invention will attract them away from areas of risk of infestation or infestation. Wait, the claims are not limited to situations where there's no infestation or risk of infestation, right? Well, I think, Your Honor, with respect, I believe in getting to it that proper claim construction indeed has that limitation. Did you argue this in your brief? Yes. Did you argue it to the PTL? Yes, sir. Yes, Your Honor. That that was a claim limitation? Exactly. I may have forgotten. Could you show me where in your brief you made the argument that that was a claim limitation? Maybe I don't understand Your Honor's question. My understanding, we've been asking you, is the statement no infestation, no risk of infestation a claim limitation here? I thought your answer was, yes, it is a claim limitation. Yes. I'm now asking you to show me where you argued in your brief that it's a claim limitation. I'm sorry, Your Honor, I thought throughout the brief we made that argument. Just show me. Pages 21 through 23. Actually, page 25. Where's the statement that there's a claim limitation of no infestation and no risk of infestation? Just show me one place where that occurs. Okay. Okay. Okay. Okay. Okay. Okay. Page 32. Of what? This will be the opening brief. We make the end with the deducement that, in other words, the claims require that the method be practiced with the intent of attracting, that Fipronil be used at a distance from locations where insects are expected to travel and feed, and that Fipronil and not some other substance causes the attraction. Well, that's not the same thing as saying there's a claim limitation that there has to be no infestation and no risk. That is not the same thing. You can't come here in oral argument and come up with a new theory of your case. Your Honor, I'm having trouble understanding the disconnect. If we start on the claim construction with our preamble phrases, which is... You came here this morning. You said there's a claim limitation. It has to be no infestation, no risk of infestation. That's not shown in the prior art. But you never argued in your brief that that's a claim limitation. Well, are you telling us maybe it's a – are you saying that, well, one, it's not a claim limitation, but are you asking and did you ask the board to give it what we all call broadest reasonable construction? Correct. Yes, ma'am. And your view then of the broadest reasonable construction would be, which seems to me the opposite of the broadest reasonable construction. Narrowest reasonable construction. To construe attracting to mean that it only is attracting if it's no risk and no insects anywhere. No. Let me see if I can clarify this because we get beyond the preamble. When we get to the preamble terms attracting insects or attracting insects – attracting and killing insects, the broadest reasonable interpretation of that term has a distance limitation we submit. First of all, in the body, attracting implies distance. Our examples in the 640 patent show insects orienting to fipronil at a distance. We have... What is the distance? The distance is towards the fipronil. No, but what is distance implies, a mile, a yard, a foot? In the examples, it is a square meter, one square meter. These are small creatures. They're insects. So you're arguing that when the claim says attracting insects that you can't – no need to attract insects if they're already there. Correct. That must mean that the insects are separated from and at a distance from... And oriented to be attracted. But that's still – I mean, giving this the broadest reasonable interpretation simply means you're going to attract insects, whether they are far away, halfway there, or right on top of it. You attract wherever they might be. You're suggesting that that infers some distance requirement, but that would seem to be the narrowest interpretation. Well, and the applicant, Your Honor, obviously the preamble phrases require use of fipronil at a location that's not disclosed in the prior art because it's a method patent. And we submit that one of ordinary skill in the art would recognize that the use of fipronil must be from a distance and not at locations already infested or at risk of infestation. Well, why is that? That's the problem I'm having. Moving to the next, moving to the body of the claim beyond the preamble, the phrase is an effective attractant amount and an amount which is effective both as an attractant and an insecticide. That would be valid regardless of where the insects happen to be. But really construing that, it really has two consequences. One, of ordinary skill in the art would recognize that those terms require that fipronil must cause the attracting and also would recognize that for an effective… is inherent in the prior art and it doesn't have to be the intent disclosed in the prior art. That's really the issue here. That's exactly. And what we say in that is properly construing the effective amount limitation, one skill in the art would know that it has to be… basically they understand that insect attracting substances are present and use of fipronil would not be an effective attractant amount at a location that's either infested or is at risk of infestation. So, we would say one of ordinary skill in the art would recognize that fipronil must be applied in the manner that fipronil and not some other attractant provides attraction of said insects when applied at a distance. Okay, do you want to save your rebuttal time? Yes, please. Thank you. Thank you. Ms. Sauer. May it please the court. BEHR has discovered a new property for fipronil but they are claiming an old use. Contrary to what BEHR is saying now, the limitation that you're trying to read into the claim, no risk of infestation, first it's not in the claim and second it's not in the specification and actually it's contrary to the specification. And it wasn't argued, right? By using the word attractive amount. But we did respond to that argument on page 15 of our red brief. The other problem with that argument is that, as I understood it, the same locations that are disclosed in the 460 patent were also disclosed in the two prior art references. Exactly, Your Honor. BEHR discloses that A2105, column 4, lines 9 through 12, that fipronil can be placed any place. They also specifically disclose that it can be placed on crops, buildings, and houses. Patent discloses that A2268, column 19, lines 13 through 44, that it can be in domestic industrial premises, buildings and houses, also crops, soil. Collier discloses that A2336, that it can be placed on plants and soil. Furthermore, they are relying on the words attractive amount. The problem with relying on that is that, again, the prior art teaches the exact same amount that BEHR discloses in their specification. BEHR discloses amounts of .00001 to 20 grams per 100 meter square. This is at A2105, column 4, lines 49 through 53. The examiner pointed out in the examiner's answer at A185, that Hatton discloses an overlapping range that's 1 to 250 grams per 100 meter square. And this is at A2267, column 17, lines 40. Let me ask you, why isn't he right that if previously, if no one had recognized that this formula, whatever it is, worked as an attractive, is that fair? That's fair. So why isn't the anticipation here merely accidental, as was true in the cases that are cited? Because a chemical compound and its properties are inseparable, and the prior art has the exact same method steps that they're claiming here. Their method step is offering fipronil for ingestion. And the board found, as a matter of fact, on A11, that the prior art satisfied that method step by offering fipronil for ingestion, for example, by spraying fipronil on plants. Which is exactly the method that Bayer discloses in their specification. So it would have been different if spraying this stuff on plants had been to assist with the growth of the plants, let's say. Then that would have had the byproduct of attracting insects, but that wouldn't be anticipated, right? I think that might be a closer call, if they're using the exact same method steps, because I think the intent, they may have not had the intent to attract insects in your hypothetical, but if they're inherently attracting insects, I believe that would still be an anticipation. Even though the earlier method claim says nothing about insects at all, it's just directed to plant growth. I think, exactly, I think that a good case on point for your hypothetical is the male case that we discussed in our red brief. And in that case, the prior art was using, they were directing lasers on the backs of guinea pigs, but not for the intent of removing hair. And the claimed invention was for the intent to remove hair, and this court held that it didn't matter that the prior art did not intend, did not direct a laser on the back of the guinea pig, intending to remove hair. That the claim was still anticipated. But I do agree with you that there may be some situations where Bayer could exploit their new discovery in a different way, as long as they claim it in a way where the method steps that they're actually claiming, which is just offering fipronil for ingestion, are not the same method steps that are in the prior art. So if the claim actually sets forth a new use, then that would be a different question. Exactly, Your Honor. If there are no further questions, I'll yield the remainder of my time. Thank you. Thank you. Mr. Litchford, you have almost five minutes. Thank you, Your Honor. First of all, I had a little more time at the table to find another reference in the brief where we made the argument of the location limitation. It's at pages 37 and 38. Again, going on with the summary of the claim construction, we concluded by saying that the artisan would recognize that the claims exclude offering fipronil at locations where insects are known or expected to feed or travel, i.e., that are already infested by or at risk of infestation by insects. Because they would understand that insect-attracting substances are present at such locations. Is there language in the specification that articulates that limitation? Only in the construction that I briefly argued when I was here at first. It's a necessary or properly construed claim of the effective amount would exclude locations where the insects are at risk because the attractants are already present. One skilled in the art would recognize that fipronil would be ineffective as an attractant there because of the existence of basically the food-type substances. But that seems to focus on whether there's other food attractants there, not on whether there are insects there or not. Right. It just doesn't seem to me to make any sense to say that the claim only covers situations where there are no insects present and not even a risk of insects being present. Well, the best response I think I can give to that is that fipronil can be used in these locations. Where the invention covers is locations away from that. It's basically locations where fipronil is the substance doing the attracting. That could turn into a fact question, say, in an infringement case down the road. What if there's competing attractants? If there's competing baits, for example. But that's our position. But that's why you're in the process of prosecution. I mean, we're trying to avoid that. You're trying to get clarity of the claim. It's not good enough to say, well, we'll preserve this argument, and then when we litigate an infringement case, we'll figure it out. I mean, unfortunately, that happens more than it should, but that's not the goal of why we're here today. But I understand that, Your Honor. But my point really is that if we have that, we're not delineating a limitation that fipronil can only be used outside from, at least as an attractant. It can be used only in areas that aren't infested or at risk of infestation. But that way it reads entirely on the prior art, if it doesn't include that limitation. Well, but this is a different method. What's different about the method? The location? The location, precisely. So this is designed for people who don't have insects. They don't need to worry about insects, but they want to attract insects to the place. No, Your Honor, this is designed for... That's what your claim limitation basically says. It is designed... Or that's what he's arguing it says. Yeah. Correct. Correct. Why would you ever use a product if there's no risk of any insects? I want to attract cockroaches to my house. I don't have cockroaches now, and I'm not at risk of them, but I want to get some cockroaches. But, Your Honor, if you could attract the roaches, assuming that's where you're at risk is inside the house, if you could attract the roaches outside the house, that's really the claim that we're trying to capture here. Why is there no risk for inside the house? Maybe it's poor terminology, but we're using that as a shorthand for saying that there are foodstuffs, there are natural attractants, where Fipronil's use is not necessary. The inventive spark, if you will, here is discovering that Fipronil can be used without other attractants in areas that don't have natural food substances or natural attractants. Okay. Thank you very much. I appreciate it. Thank you, Your Honor.